IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| Timothy & Sylvia Moore, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | Civil No. 2:05-cv-31 |
| | ) | |
| American Family Insurance Company, | ) | |
| a Wisconsin Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER AWARDING ATTORNEY FEES

This matter came before a jury on March 17, 2008 in which the jury found the Plaintiffs ("the Moores") were entitled to bad faith and punitive damages. Counsel agreed that if consequential damages were to be awarded by the jury, the Court would then determine the reasonable expenses and fees to be awarded. This order focuses solely on the issue of reasonable attorney fees and litigation expenses as the controverted and stipulated costs associated with the case have been addressed in a previous order.

The Moores lead attorney, Richard A. Clapp of Grand Forks, submitted a motion for approval of attorney's fees and litigation expenses (docket # 198) as well as a subsequent affidavit in support of the Moores' motion for approval of attorney fees and expenses (docket #199), which detailed the cumulative hours and corresponding fees of the attorneys and staff who worked on the case for 2,602.50 hours totaling $732,747.61. Moores' counsel also submitted a supplemental affidavit (docket #203), which contained clerical errors and reduced the total amount of attorney fees by $9,150.00 to $723,597.61. The defendant's ("American Family") attorney, Michael J. Morley of Grand Forks, responded by opposing the majority of the

1

expenses and fees previously presented to the Court by the Moores (docket #224-#225). In response to American Family's brief, the Moores submitted an affidavit in support of their reply which, due to clerical errors, reduced the overall attorney fees by $5,190.00 to $718,407.61 (docket #229).

The applicable rule of law that enables the Moores to recover attorney fees in an insurance-contract case stems from the North Dakota Supreme Court case of Corwin Chrysler-Plymouth, Inc. v. Westchester Fire Ins. Co., 279 N.W.2d 638 (N.D. 1979). Corwin adopted California caselaw to describe "the consequences of an insurer's breach of duty to act in good faith." Id. at 643. The Court ruled that:

> "(W)hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort . . . [where] such conduct on the part of a(n) . . . insurer constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered to compensate For [sic] all detriment proximately resulting therefrom, including economic loss as well as emotional distress resulting from the conduct or from the economic losses caused by the conduct, and, in a proper case, punitive damages . . . . It follows as a matter of course that if the insurer's tortious conduct makes it reasonable for the insured to seek the protection of counsel, the insurer is responsible for that item of damages."

Id. at 643 (quoting Mustachio v. Ohio Farmers Ins. Co., 44 Cal. App.3d 358, 363-364, 118 Cal. Rptr. 581, 584 (1975)) (citations omitted and emphasis in original).

## LODESTAR ATTORNEY FEES

The Court's preferred starting point in determining what constitutes reasonable attorney fees is to calculate the "lodestar" amount, which is the reasonable amount of hours spent on the case multiplied by a reasonable hourly rate. See City of Bismarck v. Thom, 261 N.W.2d 640, 646 (N.D. 1977).[1] In Thom the North Dakota Supreme Court explained not only the calculation

---

[1] The Court is aware that Thom is an eminent domain case but its applicability to determining attorney fees as well as its use in similar cases makes its use here appropriate. See, eg., Maristuen v. Nat'l States Ins. Co., No. A2-91-155 at 3

of the "lodestar" amount, but also the discretion that the trial court has in determining the proper awarding of attorney fees by stating that:

> [T]he trial judge must first determine the number of hours expended . . . . The trial judge must then assign specific hourly rates based upon the attorney's experience and reputation which will constitute the "lodestar." The hourly rate can be adjusted upwards or downwards on the basis of objective evaluation of the complexity and novelty of the litigation and the corresponding degree of skills displayed by the attorney. The trial court or judge should also consider the character of the services rendered, the results which the attorney obtained, and the customary fee charged in the locality for such services, as well as the ability and skill of the attorney. The court should not rely on any single item in determining reasonable attorney fees. [However], [t]he number of hours spent in total and the rate per hour are the predominant factors in determining reasonable attorney fees.

Id. at 646.

Although the Court has carefully reviewed the Moores' attorney fee submissions, there is no need to overly scrutinize every billing entry the Moores provided to the Court. Rather, the Court views the challenges made by American Family's attorney and the subsequent corrections made by the Moores' attorney as a sufficient challenge to their fees. Therefore, the Court accepts the corrections as they currently stand and finds the number of hours worked by the Moores' attorneys and staff in this case to be reasonable.

Regarding Mr. Clapp's hourly rate of $350 per hour, the Court is of the opinion that his skill, professionalism, experience, and the favorable result achieved on behalf of his clients are essential components in calculating the "lodestar" amount. However, the Court has concluded that the rate of $350 per hour is high for this area, even when considering counsel's expertise in

---

(D.N.D. Jan. 13, 1994) (memorandum and order of attorney fees). Bilden v. United Equitable Ins. Co., No. A2-86-189 at 2 (D.N.D. Aug. 23, 1989) (memorandum and order of attorney fees); Lindgren v. The Traveler Ins. Co., No. A2-86-136, A2-86-137, A2-86-138 at 5 (D.N.D. Jan. 6, 1989) (memorandum and order of attorney fees).

these types of cases. Nevertheless, Moores' counsel has taken great risk and expended considerable time on a contract claim of $48,000.

Accordingly, by risking their time and resources, the Court believes the combination of counsel's skill and success in the litigation of this case along with the risk associated with proving a breach of contract against an insurance company does entitle Moores' counsel to some augmentation. Because of this, the Court will accept the hourly rate provided to the Court by Moores' counsel and consider it as already adequately representing any enhancement.[2] The Court's determination of Moores' counsel's reasonable hours associated with this case combined with the reasonable hourly rate provides the following "lodestar" calculation:

CALCULATION OF ATTORNEY'S FEES – "LODESTAR" AMOUNT

```
TOTAL LEGAL FEES AT PREVAILING HOURLY
RATES AS PER ATTORNEY'S STATEMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . $583,617.60
LESS:  CLERICAL ERRORS:  ($9,150.00 + $5,190.00). . . . . . . . . . . . . . . . . . . . .($ 14,340.00)
TOTAL ATTORNEY FEES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$569,277.60

LITIGATION EXPENSES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$149,130.01
LESS:  STIPULATED COSTS AWARDED[3]. . . . . . . . . . . . . . . . . . . . . . . . . . . . .($ 10,072.94)
TOTAL LITIGATION EXPENSES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$139,057.07

TOTAL PLAINTIFF ATTORNEY FEES – "LODESTAR" AMOUNT. . . . . . . . . . .$708,334.67
```

**ALLOCATION OF ATTORNEY FEES**

The standard adopted by the North Dakota Supreme Court in <u>Corwin</u> provides the framework for applying California caselaw in awarding attorney fees in cases such as this. In the allocation of attorney fees, the Court has followed the rationale of <u>Dinkins v. Am. Nat'l. Ins.</u>

---

[2] Although a multiplier was not presented in this case, a multiplier is traditionally reserved for multi-party or antitrust litigation, nonetheless, the Court may use its discretion in considering a multiplier in order to reflect the legal skill, risk, and success of counsel in calculating their reasonable attorney fees. See <u>Maristuen v. Nat'l States Ins. Co.</u>, No. A2-91-155 at 4 (D.N.D. Jan. 13, 1994) (memorandum and order of attorney fees).

[3] The fees and expenses listed in the bill of costs are not to be counted in both the litigation expenses of the "lodestar" amount and the separate order regarding the bill of costs. Of the $11,280.54 that was proposed by the Moores in their stipulated bill of costs (docket #205), $1,207.60 was not included in the awarding of costs. However, even though those legal costs were not allowed, they are still an expense of the litigation. Therefore, $1,207.60 was left in the litigation expenses and calculated in the total "lodestar" amount.

Co., 92 Cal. App. 3d 222, 154 Cal. Rptr. 775 (1979), in that "attorney's fees should only be awarded to plaintiffs for those services attributable to the recovery of the amount due on the policy, and not for any efforts toward proving bad faith on the part of the insurer." Id. at 782. See also Maristuen v. Nat'l States Ins. Co., No. A2-91-155 (D.N.D. Jan. 13, 1994) (memorandum and order of attorney fees); Bilden v. United Equitable Ins. Co., No. A2-86-189 (D.N.D. Aug. 23, 1989) (memorandum and order of attorney fees); Lindgren v. The Traveler Ins. Co., No. A2-86-136, A2-86-137, A2-86-138 (D.N.D. Jan. 6, 1989) (memorandum and order of attorney fees). In determining whether the Court considers only the amount of the contract or the services attributable towards proving the breach of contract, it is important to clarify that the determinative factor in allocating attorney fees is the attorney's reasonable efforts attributable towards proving the breach of contract rather than the dollar amount of the claim.

Furthermore, the Court in similar cases has deemphasized the actual amount of the contract claim in determining attorney fees because proving the breach of contract is essential to proving both the bad faith and punitive damages claims, which often exceed the original value of the contract. See Maristuen, No. A2-91-155; Bilden, No. A2-86-189; Lindgren, No. A2-86-136, A2-86-137, A2-86-138. Without proving the contract claim, recovery on the other two claims would be impossible. Therefore, the Court carefully weighs the services attributable to the contract claim rather than actual amount of the contract when allocating reasonable attorney fees.[4]

The difficulty in determining the precise amount of attorney fees is best stated in Lindgren, as the Court ruled that "[s]ince it is, in reality, impossible to separate out those legal expenses which went toward proof of the contract claim from those that went toward proof of the

---

[4] Although it is not a determinative factor, the Court may consider the reasonable time expended by American Family on the contract claim in order to determine a more thorough estimate. See Lindgren, No. A2-86-136, A2-86-137, A2-86-138 at 12.

bad faith or punitive damages claims just by looking at billing entries or expense vouchers, the only thing the court can do is make an estimate." Lindgren, No. A2-86-136, A2-86-137, A2-86-138 at 13.  Even though it is an estimate, the Court does not arrive at its decision lightly as the Court has carefully reviewed the specific aspects of the separate claims and makes its decision based on a legal foundation of over twenty years in private practice, six years as United States Attorney, and over twenty years as United States District Judge.  The Court combines its experience and knowledge of litigating this type of case in this region along with its sense of equity and fairness in order to determine the most reasonable outcome.

After listening and considering all the evidence introduced, the Court was left with the impression that at least one-third of the attorney fees and expenses went directly towards the proof of the breach of contract claim, and that no more than two-thirds was solely attributable to proof of bad faith and punitive damages.  The Court finds this allocation to be a proper representation of the effort and time put forth by Moores' attorneys in their presentation of the contract claim and also represents a fair allocation of the litigation expenses without over analyzing each item of expense.  Therefore, in setting the amount of the recovery for attorney fees and litigation expenses, the Court will deduct two-thirds from the previously calculated "lodestar" amount.  This brings Moores' total recovery of attorney fees and litigation expenses to $236,111.55 and is calculated as follows:

CALCULATION OF TOTAL RECOVERY FOR LITGATION EXPENSES

TOTAL PLAINTIFF ATTORNEY FEES – "LODESTAR" AMOUNT. . . . . . . . . .$708,334.67

LESS:  2/3 FOR PROOF OF BAD FAITH AND PUNITIVES. . . . . . . . . . . . . . . ($472,223.12)

**TOTAL RECOVERY FOR LITIGATION EXPENSES. . . . . . . . . . . . . . . . . . . .$236,111.55**

## **ORDER**

IT IS ORDERED that plaintiff recover from the defendant attorney fees and litigation expenses in the sum of $236,111.55 and that the judgment previously entered in this case be amended to include this award.

Dated this 27th day of June, 2008.

RODNEY S. WEBB   District Judge
United States District Court