IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | |
|---|---|
| Timothy & Sylvia Moore, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil No.: 2:05-cv-31 |
| v. ) | |
| ) | |
| American Family Insurance ) | |
| Company, a Wisconsin ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant American Family Insurance Company ("American Family") has filed a consolidated motion seeking judgment as a matter of law, new trial, or, in the alternative, remittitur (doc. #195).  Plaintiffs Timothy and Sylvia Moore ("the Moores") argue the evidence presented at trial supports the verdict (doc. #247).  For the reasons discussed below, American Family's motion is **DENIED**.

## I.  Background

Timothy Moore's duplex, insured by American Family, was lost as a result of fire.  After their claim for proceeds from their insurance policy was denied, the Moores brought suit against American Family, claiming American Family breached its insurance contract by wrongfully denying their claim and that American Family did not investigate their claim in good faith as required by law.  American Family contended that it properly denied the Moores' claim under the insurance policy.

1

The Court held a trial in March 2008.  The jury returned a verdict in favor of the Moores for $48,414.97 for breach of contract, $1,150,000.00 for consequential damages flowing from American Family's bad faith, and $1,150,000.00 in punitive damages (doc. #185).  The Court added interest in the amount of $11,492.74 and entered judgment against American Family for a total of $2,359,907.71 (doc. #188).

## II.  Discussion

Rule 50(a)(1) of the Federal Rules of Civil Procedure allows the Court to enter judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  There is a high standard placed upon overturning a jury verdict.  <u>Hathaway v. Runyon</u>, 132 F.3d 1214, 1220 (8th Cir. 1997).  Judgment as a matter of law is appropriate only when no evidence supports the verdict.  <u>Id.</u>  The Court must give the nonmoving party the benefit of all reasonable inferences and view the evidence in that party's favor.  <u>Id.</u>

Rule 59 of the Federal Rules of Civil Procedure provides that a "new trial may be granted . . . on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have . . . been granted in actions at law in the courts of the United States."  The Court may set a verdict aside where it is against the great weight of

the evidence or to prevent injustice.  Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc., 466 F.2d 179, 186 (8th Cir. 1972).

Remittitur is proper only when the jury's verdict is so grossly excessive as to shock the court's conscience.  Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 763 (8th Cir. 2003).  "A verdict is not considered excessive unless there is 'plain injustice' or a 'monstrous' or 'shocking' result."  Id. (quoting Jenkins v. McLean Hotels, Inc., 859 F.2d 598, 600 (8th Cir. 1988)).  With these standards in mind, the Court turns to the substance of American Family's motion.

**A.   American Family's Vandalism Defense**

American Family argues the Court abused its discretion when it granted the Moores' motion preventing American Family from asserting the vandalism condition in its "named peril" policy as the basis for its denial of coverage.  The Court ruled there was coverage for the fire loss because fire was a covered cause of loss under the policy, and there only need be one covered cause of loss to trigger insurance coverage, subject to applicable exclusions.  American Family argues this was error because arson is a form of vandalism, and if Timothy Moore did not set the fire to his duplex, then the fire was set by vandals and would still not be covered under the policy.  The Court disagrees.  First, Paul Aamodt, American Family's own Senior Claims attorney, testified at his deposition that "you don't need more than one peril; if you have one, then there's coverage" (doc. #107.75, at

3

19-20).  Fire loss was covered under the Moores' policy, and thus
it is not a defense if it happened as a result of vandalism,
since it was still fire that caused the loss.  See American
States Ins. Co. v. Rancho San Marcos, 97 P.3d 775, 779 (Wash.
App. Div. 3 2004) ("[C]overage here should not turn on esoteric,
semantic, or nice distinctions.  Vandalism describes the motive
for the event, not the event.").  Moreover, contrary to American
Family's assertions in its reply brief, "Not all arson is an act
of vandalism."  Id.  See also MDW Enterprises, Inc. v. CNA Ins.
Co., 4. A.D.3d 338, 341 (N.Y.A.D. 2 Dept. 2004) (holding that
ordinary business people generally view vandalism and arson as
distinct perils, and if the insurance company wanted to exclude
coverage for arson they should have said so clearly in the
policy); Nationwide Mut. Ins. Companies v. Lagodinski, 2004 ND
147, ¶ 19 (noting that ambiguity in the language of an insurance
policy is construed in favor of the insured).

    Furthermore, American Family argues that it was prejudiced
because the Court granted the Moores' motion on different grounds
than those argued in the Moores' initial brief on the matter, and
thus it did not have an opportunity to respond to the grounds
upon which the Court granted the motion.  As the Moores point
out, however, their initial brief did contain the exact quoted
passage from Paul Aamodt the Court referenced in its ruling (doc.
#114).  Moreover, in light of the inapplicability of the defense
due to the fire loss coverage, American Family has not shown that
it has been prejudiced.  Even in light of further briefing now on

the issue, as discussed above, the Court still disagrees with American Family that the defense applies.

**B.   Juror Misconduct**

American Family next asserts it is entitled to a new trial because of the one of the juror's misconduct.  On April 4, 2008, while the jury was deliberating, the Jury Foreperson sent a note to the Court stating, "We the Jury have discovered that a juror has done research on the earnings of American Family Insurance. He has not relayed his finding to the other jurors.  How do we handle this?" (doc. 184-6).  The Court discussed the matter with counsel, after which counsel for the Moores agreed that the juror should be excused, while counsel for American Family moved for a mistrial.  After denying the motion for mistrial, the Court responded to the jury: "The juror should immediately remove himself from the jury room.  I will excuse him from further participation on this jury.  The remaining jurors will continue deliberation with a view toward decision in this case." (doc. 184-6).  The Court then met with the dismissed juror in chambers to assess the extent of his communications.  The juror told the Court that he had researched American Family's profits on his computer the previous evening.  However, he stated that he did not share the results of his research with anyone on the jury. Shortly thereafter, the jury reached a unanimous verdict.

"In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing

that materials are prejudicial to the unsuccessful party."
Peterson by Peterson v. General Motors Corp., 904 F.2d 436, 440
(8th Cir. 1990) (citation omitted).  Under Federal Rule of
Evidence 606(b), a juror may testify as to whether extraneous
prejudicial information was brought to the jury's attention.
Anderson v. Ford Motor Co., 186 F.3d 918, 920.  The judge then
uses that testimony to determine whether there is a "reasonable
possibility" that the communication altered the verdict.  Id. at
921.

The Court first disagrees with American Family that counsel
for both parties should have been allowed to question Juror
Ronholm regarding his improper research.  The Court conducted a
proper inquiry under Federal Rule of Evidence 606(b), and the
requisite information was ascertained from Ronholm during this
inquiry to establish whether there was any detrimental effect
from his conduct on the jury.  The Court also provided a
transcript of its examination to both parties.

The Court is frustrated and disappointed by Juror Ronholm's
conduct, particularly in light of its repeated admonitions not to
engage in such conduct.  Ultimately, however, the Court believes
there was no prejudice to American Family.  First, the question
received by the Jury Foreperson, before any inquiry was
conducted, stated explicitly, "He has not relayed his findings to
the other jurors." (doc. 184-5).  The Court removed Ronholm from
the jury immediately after discussing the matter with counsel
from both parties.  During the Court's later inquiry in chambers,

Ronholm stated that he did not share the results of his research with the jury.  Ronholm's statement that "American Family can afford it," while disappointing, does not by itself establish prejudice against American Family.  Any suggestion that a large insurance company "can afford it" is not likely to be a major revelation on members of the jury.  See <u>Kehm v. Procter & Gamble Mfg. Co.</u>, 724 F.2d 613, 623 (8th Cir. 1983) (noting that it was "highly probable" that the jury knew of the financial disparities between Procter and Gamble, a well-known company, and the plaintiff).  Ronholm did not provide any detailed financial figures of American Family to the jury.  And ultimately, he was removed from the jury and did not participate in the verdict, unlike the juror at issue in <u>Anderson</u>.[1]  186 F.3d at 921.

    **C.   Refusal to Submit a Polygraph of Timothy Moore**

The next issue is whether evidence should have been allowed regarding Timothy Moore's refusal to submit to a polygraph examination.  On cross-examination, defense counsel asked Moore whether Steve Gilpin, special agent with the North Dakota Bureau of Criminal Investigation, asked him to take a polygraph examination about the fire and what happened, and that Moore refused.  The Court sustained the objection of plaintiffs'

---

[1] The court in <u>Anderson</u> did not base its order for new trial on whether other jurors considered the improper information; rather, the court found that the juror who engaged in the conduct was biased in his consideration of the issues, and therefore his participation in the verdict resulted in prejudice.  186 F.3d at 921.

counsel, stating that the refusal to take a polygraph could not be used as substantive evidence.

American Family recognizes that evidence of the taking or refusal to take a polygraph generally is not admissible, but it argues that the Eighth Circuit has carved out an exception when the evidence pertains to a party's credibility.  American Family cites Underwood v. Colonial Penn Ins. Co., 888 F.2d 588 (8th Cir. 1989), which upheld the admissibility of evidence of a refusal to take a polygraph for purposes of impeachment and proof of motive. American Family's argument does not remain within the boundaries of this very limited exception, however.  "Underwood was explicitly limited 'to the narrow factual pattern' presented in that case."  Aetna Ins. Co. v. Barnett Bros., Inc., 289 F.2d 30, 34 (8th Cir. 1961).  The refusal to take a polygraph still may not be introduced as substantive evidence.  Id.  In Underwood, the refusal to take a polygraph occurred before the house burned down.  888 F.2d at 590-91.  On the other hand, the court in Underwood recognized that "[i]n contrast, the polygraph evidence in Aetna . . . could not have shown motive under Rule 404(b) because the witness's refusal to submit to a polygraph test occurred after the fire."  Id. at 591.

The court in Underwood also believed the evidence before it was more probative of untruthfulness than unfairly prejudicial. Id.  However, Underwood also recognized the discretion district judges hold in excluding polygraph evidence.  Id. at 590.  Here, in contrast to Underwood, any probative value of Moore's refusal

to submit to a polygraph was outweighed by the highly prejudicial effect of such evidence.  <u>Aetna</u>, 289 F.2d at 34.

### D.   Sylvia Moore's Statement

After the fire occurred, Sheriff's Deputy Robert Thomas and Special Agent Steve Gilpin interviewed Sylvia Moore regarding what knowledge she had of the cause and circumstances of the fire.  The plaintiffs successfully moved to exclude any testimony relating to a statement made by Sylvia Moore that she would not have been surprised if her husband had set the fire.  American Family now claims that the Court abused its discretion in excluding this testimony because it was highly relevant and a proper foundation had been laid.

"A district court has wide discretion in admitting and excluding evidence, and 'its decision will not be disturbed unless there is a clear and prejudicial abuse of discretion.'" <u>Bennett v. Hidden Valley Golf and Ski, Inc.</u>, 318 F.3d 868, 878 (8th Cir. 2003) (internal citation omitted).  The Court did not abuse its wide discretion in this case.  While Sylvia Moore was a litigant in this case, she was not insured.  While the evidence may be admissible against her, it was not admissible against Timothy Moore, the insured party.

### E.   Statement Regarding Timothy Moore as a Suspect

American Family next alleges error in the Court's decision to exclude testimony of Deputy State Fire Marshall Jerry Splitt that Timothy Moore was the "prime suspect" in the fire

investigation.  American Family argues that such evidence would
have shown the jury that it had a reasonable basis to deny the
claim.  However, American Family makes an unsubstantiated leap in
reaching this conclusion because unlike the cases it relies upon,
American Family's evidence was highly speculative and
prejudicial.  For example, American Family quotes the following
section from <u>American Manufacturers Mutual Ins. Co. v. Cupstid</u>,
673 F. Supp. 186 (S.D. Miss. 1987), with its own emphasis added:

> There was abundant evidence to support its conclusion
> that the Cupstids, or someone acting on their behalf,
> were responsible for the fire which caused the loss,
> including, inter alia, **reports of three investigations
> which concluded that the fire had been intentionally
> set and which pointed to the Cupstids as the prime
> suspects**, information . . . that the Cupstids were
> directly involved in the setting of the fire, and other
> evidence tending to show various misrepresentations
> made by the Cupstids in connection with the application
> for insurance and the proof of loss.

American Family emphasizes the wrong issue.  The issue is
not the "prime suspect" connection; it is the abundance of
evidence found in <u>Cupstid</u>, versus the highly speculative nature
of the statement in this case.  Splitt admitted that he had not
accused anyone of arson and he did not know who started the fire,
and there was no indication in his reports that Timothy Moore was
near the scene of the fire when it occurred.  Therefore, the
Court appropriately excluded his testimony as speculative and
unfairly prejudicial.

**F.   Jury Instruction on the Insurance Company's Obligations**

In the Court's final jury instruction #13, the jury was instructed that North Dakota law has prohibited certain practices as unfair and deceptive acts or practices in the business of insurance.  The instruction read: "If American Family, who is engaged in the business of insurance, performed, without just cause and with such frequency as to indicate a general business practice, one or more of the following unfair practices, you may consider violation of this law as evidence of bad faith on the part of American Family." (doc. 187).  The "following unfair practices" referred to in the instruction tracked those listed in North Dakota Century Code Section 26.1-04-03(9).  American Family asserts the only evidence was that it allegedly committed the unfair claim settlement practices in this case, and not with such frequency as to indicate a general business practice.

District courts are given broad discretion in choosing the form and language of jury instructions.  In re Prempro Products Liability Litigation, 514 F.3d 825, 829 (8th Cir. 2008).  A jury verdict will be reversed only if the erroneous instruction affects a party's substantial rights, and review is limited to "whether the instructions, taken as a whole and viewed in the light of the evidence and the applicable law, fairly and accurately submitted the issues to the jury."  Id.

In this case, the Court provided a near verbatim restatement of North Dakota law.  The instruction simply informed the jury that it *may* consider violation of this law as evidence of bad faith *if* American Family performed these practices without just

11

cause and with a frequency indicating general business practice, as the law states.  This is not prejudicial to American Family, it is simply a restatement of the relevant law.  See id. at 830.


**G.   Improper Closing Argument by Plaintiffs' Counsel**

American Family next argues it is entitled to new trial because the Moores' counsel, during his closing argument, improperly referenced a previous case involving American Family, suggesting that they did not learn their lesson earlier and that higher damages were thus needed "to make sure that American Family Insurance Company doesn't do this again."  American Family must show that these comments made during argument were plainly unwarranted and clearly injurious.  Morrissey v. Welsh Company, 821 F.2d 1294, 1303 (8th Cir. 1987).  It cannot.  Even if these comments were plainly unwarranted, there is no showing that it was clearly injurious to American Family, particularly because the Moores' counsel suggested that "seven or eight million dollars" was not enough, and the jury awarded an amount not on par with those figures.  See McGuire v. Tarmac Environmental Co., Inc., 293 F.3d 437, 442 (8th Cir. 2002) (holding there was no prejudice because the jury awarded far less than the amounts improperly suggested by counsel).

**H.   The Change in the Trial Procedure**

According to American Family, the Court rearranged the trial procedure on little notice, requiring the Moores to present a

case and proof of the issuance of the policy, then shifting the
burden to American Family to present its case and defense on
arson.  American Family claims this was all to be done in one
proceeding initially, with the plaintiffs putting on their case
first, including their refuting the arson defense.

Contrary to American Family's claim, there was no unfair
surprise regarding the procedure.  The parties were made aware of
the procedure during the final pretrial conference on March 10,
2008, after both parties indicated they did not want the trial
bifurcated (doc. #139).  The matter was further discussed during
another pretrial conference in Grand Forks chambers, and again
before the start of the trial and during jury selection.
American Family should not have been surprised by the procedure,
nor was it prejudiced, and thus the Court did not abuse its wide
discretion in determining the order of proof.  <u>Marmo v. Tyson
Fresh Meats, Inc.</u>, 457 F.3d 748, 758-59 (8th Cir. 2006).

**I.   The Court's Refusal to Give Defense Instructions**

A district court is given broad discretion in formulating
jury instructions.  <u>Aerotronics, Inc. v. Pneumo Avex Corp.</u>, 62
F.3d 1053, 1062 (8th Cir. 1995).  "One of the purposes of jury
instructions . . . is to inform the jury of the various
permissible ways of resolving the issue in the case, and a party
is entitled to an instruction on its theory of the case so long
as it is legally correct and there is factual evidence to support
it."  <u>Thornton v. First State Bank of Joplin</u>, 4 F.3d 650, 652

(8th Cir. 1993).  However, a district court "is not bound to give the jury instruction requested by the litigants" and "jury instructions are sufficient if they state the governing law fairly when read as a whole." <u>Financial Holding Corp. v. Garnac Grain Co.</u>, 965 F.2d 591, 594-95 (8th Cir. 1992).  American Family submits that the Court's refusal to give a number of jury instructions inflicted prejudice.

### 1.  Proof of Arson

American Family asserts it was entitled to an instruction on its theory of the case regarding arson and its burden of proof to establish arson on the part of Timothy Moore.  The instruction related to circumstantial evidence that may be used to support an inference that the insured set the fire or arranged to have it set.  The Court did not abuse its discretion because its Preliminary Instruction No. 11, "Evidence - Direct and Circumstantial", as well as Preliminary Instruction No. 8, "Inferences Permitted" and Preliminary Instruction No. 9, "Inferences Defined" provided an accurate statement of the law.

### 2.  Vandalism

The Court also refused to give two requested instructions regarding American Family's vandalism defense.  This refusal was proper because the instructions were not legally correct as a result of the Court's pre-trial ruling precluding American Family from asserting this defense.  <u>See Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co.</u>, 295 F.3d 68, 76 (1st Cir. 2002)

(holding that the court's refusal to give an instruction was proper because it was another attempt to have the jury re-assess the court's pre-trial rulings).

### 3.   Landlord Obligations

Timothy Moore's inability to finance the removal of asbestos and transfer of the building provided a motive for arson, according to American Family.  American Family thus requested an instruction regarding a landlord's obligation to put and keep the residential premises rented to others in a good, safe, and habitable condition.  However, the Court did not err in refusing to give this instruction because it was not supported by the evidence and would have prejudiced Timothy Moore.

### 4.   Fair Treatment Under the Law

American Family also requested an instruction regarding fair treatment under the law because of the Moores' counsel's references to the Moores being the "underdogs" in the trial.  The Court did not err in refusing to give this instruction because the matter was already covered by Preliminary Jury Instruction No. 5, "All Persons Equal Before the Law," which accurately stated the law as it pertains to fair treatment.

### 5.   Failure to Produce Evidence and/or Witness

Timothy Moore testified during trial as to his inability to maintain insurance and other harmful effects incurred as a result of this matter.  American Family requested an instruction regarding failure to produce evidence because it claims no supporting evidence was produced to corroborate Moore's testimony.  The Court disagrees.  Timothy Moore's testimony, in addition to that of his experts, provided sufficient evidence for the jury to consider the issue.

### 6.   Permissible Conduct

American Family next contends it was error not to give North Dakota Pattern Civil Jury Instruction # C-20.50, "Permissible Conduct", which provides that conduct that would be extreme and outrageous is permissible when the person has done no more than exercised her legal rights in a permissible way.  Once again, the essence of this matter was incorporated in the Court's other instructions.  For example, Final Jury Instruction No. 5, "Theory of Defense" provided that if American Family's allegations were proven true, it was not liable to pay the benefits under the policy.  Final Jury Instruction No. 3, "'Arson,' Intentional Loss and Willful Acts" also stated that an insurer could not be held liable for loss caused by a willful act of the insured.

### 7.   Bad Faith and Punitive Damage Instructions

American Family argues it was entitled to a number of instructions relevant to the issues of bad faith and punitive damages.  First, American Family requested an instruction

defining "intentional and reckless conduct" in relation to the Moores' emotional distress claim.  Next, American Family requested that "extreme and outrageous conduct" be defined for similar grounds.  Finally, an instruction was denied relating to the elements of intentional infliction of emotional distress.

The Court acted within its discretion in denying these instructions.  Final Jury Instruction No. 9, "Bad Faith Claim" discussed an insurer's good faith obligations and the consequences of its failure to act in conformity therewith.  The instruction correctly told the jury that the bad faith claim was a separate issue and required a finding that American Family denied the benefits without proper cause, and that it knew or should have known that it had no reasonable basis for doing so. Final Jury Instruction No. 19, "Measure of Damages - Bad Faith" further discussed emotional distress and bad faith issues as it pertains to damages.  Furthermore, Final Jury Instruction No. 22, "Punitive or Exemplary Damages" detailed the damages available if American Family "acted with oppression, fraud, or actual malice as defined in these instructions."  These terms were then defined in Final Jury Instruction No. 23, "Oppression/Fraud/Actual Malice."  Finally, Final Jury Instruction No. 24, "Bad Faith Alone - Exemplary or Punitive Damages" clarified once more that bad faith on the part of the insurer is not sufficient in and of itself to justify awarding punitive damages because an additional finding of oppression, fraud, or actual malice was required. Given the foregoing instructions, it is clear that the Court

acted within its discretion in advising the jury of the applicable law at issue.  The Court's instructions regarding the emotional distress and punitive damage issues properly informed the jury of the various permissible ways of resolving the issues. Thornton, 4 F.3d at 652.


### 8.  Advice of Counsel

Finally, American Family requested the Court give an instruction establishing that reliance on the advice of counsel may constitute good faith and thus would be a defense to a claim of bad faith.  The Court again acted within its discretion in denying this instruction because there was insufficient evidence that American Family relied on the advice of counsel before denying the Moores' claim.

### J.  The Claim for Loss of Rental Profits

American Family next contends the Court committed error in not dismissing the Moores' claim for loss of rental income from the property because the damages were not proper bad faith damages and they were speculative.  These damages were consequential damages, however, flowing from American Family's refusal to pay the Moores' claim.  Furthermore, there was competent testimony regarding the housing allowances and expectations for rental profits, in addition to Timothy Moore's believable intentions to rent the property.  "Future damages must

be proved with reasonable certainty; they cannot be awarded on
the basis of speculative possibilities or conjecture." <u>Olmstead
v. Miller</u>, 383 N.W.2d 817, 822 (N.D. 1986).  The Moores' evidence
was sufficient to prove their claim for lost rental profits with
reasonable certainty.


### K.   The Jury's Award for Bad Faith Damages

The jury awarded $1,150,000 for consequential damages of
American Family's bad faith.  American Family asserts this award
was not supported by the evidence and was awarded under the
influence of passion and prejudice.

"A verdict is not excessive unless the result is monstrous
or shocking." <u>Taylor v. Otter Tail Corp.</u>, 484 F.3d 1016, 1019
(8th Cir. 2007).  A verdict is excessive "when the amount is so
unreasonable and extreme as to indicate passion or a prejudice on
the part of the jury; the award is so excessive as to be without
support in the evidence; or the jury verdict is so excessive as
to appear clearly arbitrary, unjust, or such as to shock the
judicial conscience." <u>Id.</u>

American Family claims that the bad faith damages were
unsupported by the evidence because Timothy Moore's testimony
that he would be unable to get insurance was speculative.  The
Court disagrees.  It was certainly feasible that Moore would be

19

unable to obtain insurance as a result of this matter.  Moore
also presented evidence of the emotional distress he suffered as
a result of being labeled an arsonist.  "Because a primary
consideration in purchasing insurance is the peace of mind and
security it will provide, an insured may recover for any
emotional distress resulting from an insurer's bad faith."
Ingalls v. Paul Revere Life Ins. Group, 1997 ND 43, ¶ 37.  Moore
presented sufficient evidence that he suffered emotional distress
as a result of being denied coverage and being labeled an
arsonist.  Furthermore, the Court respects the jury's "wide
discretion in evaluating and awarding these damages."  Id. at ¶
39.  It is the jury's province to award bad faith damages based
on its good sense and practical judgment.  Id.

     **L.   The Jury's Award for Punitive Damages**

The jury also awarded $1,150,000 in punitive damages, which
American Family claims was not supported by the evidence and was
awarded under the influence of passion or prejudice.  The law is
clear that an insurer who violates its duty of good faith may
face punitive damages "if it acted 'with the intent to vex,
injure or annoy, or with a conscious disregard of the plaintiff's
rights."  Id. at ¶ 44.  Under North Dakota Century Code Section
32-03.2-11, a jury is permitted to award damages in the amount of
two times compensatory damages, or $250,000, whichever is
greater.

The amount of punitive damages in this case is not so great that it proves passion or prejudice on the part of the jury. Similar to <u>Ingalls</u>, the jury gave thoughtful consideration to the award based on the evidence before it.  <u>Id.</u> at ¶ 49.  Simply because its resulting verdict was large does not provide justification for jumping to the conclusion that the verdict was the product of passion or prejudice.  <u>Id.</u>  This is particularly true because the jury's award was half of what could have been provided under North Dakota law.

**M.   Remittitur**

Finally, American Family argues in the alternative for remittitur.  "Remittiturs are generally granted when a verdict is plainly excessive."  <u>Morrissey</u>, 821 F.2d at 1299 (citation omitted).  The jury's verdict is supported by the evidence.  The Moores presented substantial evidence of American Family's bad faith denial of their claim and the effects of such conduct.  The Court cannot conclude the jury's verdict "shocks the conscience" of the Court, and the verdict does not result in an injustice. It simply is not "monstrous" in light of the significant evidence presented by the Moores.  Therefore, the Court will not lessen the jury's award.

**III. Conclusion**

The evidence presented at trial supports the jury's verdict. Therefore, judgment as a matter of law, new trial, and remittitur are improper.   American Family's motion is **DENIED**.

**IT IS SO ORDERED**

Dated this 26th day of August, 2008.


RODNEY S. WEBB, District Judge
United States District Court